UNITED STATES of America, Plaintiff,

v.

James Vernon MAGEEAN, Defendant.

No. CR–R–84–67–ECR.

United States District Court,
D. Nevada.

Order and Minute Order Oct. 10, 1986.

Supplemental Order and On Petitions
to Adjudicate Claims Nov. 24, 1986.

Donald Cavin Hill, Asst. U.S. Atty., Reno, Nev., for plaintiff.

Paul G. Sloan, Jeffrey S. Ross, San Francisco, Cal., and John L. Conner, Reno, Nev., for defendant.

## ORDER

EDWARD C. REED, JR., Chief Judge.

FACTS

On March 12, 1986, James Vernon Mageean was found guilty of violations of the RICO statute, 18 U.S.C. § 1962(c) and (d). The acts giving rise to this conviction occurred between April of 1978 and May of 1984. Following the conviction, the Court ordered forfeiture of 100% of the shares of Ark Distributing Company, Inc., (Ark), an enterprise engaged in racketeering activities. Pursuant to 18 U.S.C. § 1963(m)(1), the United States gave notice of the forfeiture both by publication and by direct notice to interested third parties.

On December 23, 1985, an airplane in which Ark owned an interest crashed into the Sun Valley Shopping Center in Concord, California. The crash caused seven deaths and several injuries. Suits have been filed on behalf of several of those injured in California state court against

Ark and other defendants. The state court action has been stayed pending determination by this Court of the tort claimants' rights against Ark's assets.

Several of these tort claimants have also filed petitions to adjudicate their claims in the forfeited property of Ark pursuant to 18 U.S.C. § 1963(m). These tort claimants now move this Court for an order requiring that the assets of Ark be held intact until the rights of all lawful claimants are determined. Notice of the setting of the hearing on this motion was given by order of the Court on August 16, 1986.

The United States Attorney has petitioned this Court for an order approving the settlement of five claims made pursuant to 18 U.S.C. § 1963(m). The government also requests that the Court authorize the disposition of the assets involved and the division of proceeds from such sales.* The claimants include Friedman, Sloan & Ross, P.C., a law firm which represents Ark in an ongoing civil litigation, and four parties claiming to have security interests in property held by Ark. In exchange for withdrawing their claims against Ark, the settlements contemplate that these claimants will be paid off by the government. In connection with their motion to require that Ark's assets be held intact, the tort claimants have petitioned the Court to stay these settlements so that the assets of Ark may be preserved until their claims are adjudicated.

Several other unsecured parties have filed petitions to adjudicate their interests in the forfeited property. The Court notes, however, that none of these parties have joined the tort claimants' motions to hold Ark's assets intact and to stay the government's proposed settlements.

DISCUSSION

Two issues are raised by the tort claimants' motions to freeze Ark's assets. First, the Court must determine what assets were forfeited to the United States pursuant to this Court's forfeiture order. And second, it must be determined whether, under the circumstances of this case, this Court has the authority to grant the relief requested by the tort claimants.

Although the forfeiture order explicitly applied only to 100% of the stock in Ark, the government and all other interest parties have acted as if the corporation's assets themselves were also forfeited. Therefore, the Court must determine the extent of the forfeiture order.

It appears that there are no cases which decide whether the forfeiture of stock is equivalent to forfeiture of the underlying assets, although the issue has been raised by other courts. *See United States v. Ambrosio,* 575 F.Supp. 546, 549 (E.D.N.Y. 1983). The statute and its legislative history, however, provide guidance. 18 U.S.C. § 1963(a) and (b) read:

(a) Whoever violates any provision of section 1962 of this chapter shall be fined not more than $25,000 or imprisoned not more than twenty years, or both, and shall forfeit to the United States, irrespective of any provision of State law—

(1) any interest the person has acquired or maintained in violation of section 1962;

(2) any—

(A) interest in;

(B) security of;

(C) claim against; or

(D) property or contractual right of any kind affording a source of influence over;

any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of in violation of section 1962; and

(3) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962. *The court, in imposing sentence on such person shall order, in addition to*

---

* The Court does not purport to deal with the government's motions for approval of settlements in this order. With reference to the separate minute order filed contemporaneously with this order, the Court also notes that it is without authority to approve such settlements.

*any other sentence imposed pursuant to this section, that the person forfeit to the United States all property described in this subsection.* In lieu of a fine otherwise authorized by this section, a defendant who derives profits or other proceeds from an offense may be fined not more than twice the gross profits or other proceeds.

(b) Property subject to criminal forfeiture under this section includes—

(1) real property, including things growing on, affixed to, and found in land; and

(2) tangible and intangible personal property, including rights, privileges, interests, claims and securities.

18 U.S.C. § 1963(a) and (b) (emphasis added).

■ Congress intended to emphasize the mandatory nature of criminal forfeiture by directing that the courts "shall" order forfeiture of all property described in § 1963(a). S.Rep. No. 225, *supra*, at 3383. *See also United States v. Kravitz*, 738 F.2d 102, 104–105 (3rd Cir.1984), *cert. denied*, 470 U.S. 1052, 105 S.Ct. 1752, 84 L.Ed.2d 816 (1985). It is also clear that Congress intended that the concept of "property" as used in § 1963 to be broadly construed. S.Rep. No. 225, 98th Cong., 2d Sess., *reprinted* in 1984 U.S. Code Cong. & Ad. News 3182, 3374, 3383. In this case, all of Ark's assets fall within § 1963(a)'s description of property. Moreover, since Ark, as an enterprise, was involved in racketeering activities, and since its assets constitute proceeds from that activity, the entire enterprise could have been forfeited to the United States. *See United States v. Thevis*, 474 F.Supp. 134, 144–145 (N.D.Ga. 1979) *aff'd*, 665 F.2d 616 (5th Cir.1982), *cert. denied*, 458 U.S. 1109, 102 S.Ct. 3489, 73 L.Ed.2d 1370 (1981) (if the government shows that each of a corporation's assets contributed to or were utilized in forwarding racketeering activities, then forfeiture of all of its assets would be proper). Therefore, the Court finds that the assets of Ark were forfeited to the United States

pursuant to the forfeiture order of March 13, 1986.

■ The Court will now address the issue of whether it has the authority to order that the assets of Ark be held intact and that the execution of the proposed settlements be stayed pending determination of the lawful claims made against those assets. The Court notes at the outset that under 18 U.S.C. § 1963 its authority is very limited. With regard to claims made by third parties asserting an interest in forfeited property, the Court merely has the power to determine the validity of the claims and to amend the order of forfeiture in accordance with its determination. 18 U.S.C. § 1963(m). The Court notes, however, that it may have an adjunct power to stay the disposition of forfeited property pending its adjudication of third party claims even though the statute gives no express authority for such actions. But even assuming *arguendo* that this Court holds this power, it could only be exercised in circumstances where the Court's jurisdiction to adjudicate claims cognizable under 18 U.S.C. § 1963(m)(6)(A) and (B) is at issue. Therefore, for purposes of this motion, it is necessary to determine whether the tort claimants have any interest under the statute in the forfeited assets of Ark.

This Court appears to be writing on a clean slate on the issue of whether tort claimants have a judicially cognizable interest in forfeited property under 18 U.S.C. § 1963. The legislative history of the 1984 amendments to § 1963 and cases in other areas, however, are instructive on this issue.

Prior to the 1984 amendments, third parties asserting an interest in forfeited property could seek redress only by petitioning the Attorney General. S.Rep. No. 225, *supra*, at 3374, 3390. Congress enacted 18 U.S.C. § 1963(m) so that certain third parties challenging the validity of a forfeiture order could instead petition the courts to adjudicate the validity of their interests. As part of this scheme, Congress created two statutory categories of claimants entitled to have the Court amend its forfeiture

order if they proved their claims. The two categories recognized by the statute are:

    (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

    (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section ...

18 U.S.C. § 1963(m)(6).

In enacting subsection (m), Congress recognized that since criminal forfeiture actions are *in personam* proceedings, a forfeiture order would be invalid if it reached a third party's interest in property which was either exclusive of or superior to the interest of the defendant. S.Rep. No. 225, *supra*, at 3391. Having provided a judicial remedy for these categories of claimants, however, other third party claimants are expressly denied any other judicial remedy:

    (j) Except as provided in subsection (m), no party claiming an interest in property subject to forfeiture under this section may—

    (1) intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section; or

    (2) commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section.

18 U.S.C. § 1963(j).

The legislative history also makes clear that the exclusive remedy for parties having claims based on equitable grounds and parties who fail to obtain relief under the ancillary hearing provision of 18 U.S.C. § 1963(m)(6) is to petition the Attorney General for remission or mitigation of forfeiture. S. Rep. No. 225, *supra*, at 3391–3392. The Attorney General, pursuant to 18 U.S.C. § 1963(h)(1) and (i)(2), has promulgated procedures which make this remedy available. *See* 28 C.F.R. Part 9.

Therefore, the tort claimants have no right to have the forfeiture order amended unless they fit within one of the statutory categories. Since the aircrash occurred after the criminal acts giving rise to the forfeiture, the only category into which these claims possibly fit is that of bona fide purchaser for value.

This reasoning is reinforced by 18 U.S.C. § 1963(c) which reads:

    (c) All right, title, and interest in property described in subsection (a) vests in the United States upon the commission of the act giving rise to forfeiture under this section. Any such property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (m) that he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section.

Thus, the United States had a vested interest in Ark at the time of the aircrash superior to any interest of the tort claimants, unless they establish that they are bona fide purchasers.

The tort claimants may argue that they should be considered bona fide purchasers because the intent of Congress is not served by applying the "relation-back" doctrine to them. A recent case may aid this argument. In *United States v. Figueroa*, 645 F.Supp. 453 (W.D.Pa.1986), the district court held that, under 21 U.S.C. § 853(n)(2), a good faith provider of legal services falls within the scope of persons that Congress recognized as being entitled to a judicial

determination of their claims. The court acknowledged that the attorney was not, in a literal sense, an innocent bona fide purchaser under § 853(c) (which is identical to § 1963(c)). According to the court, however, the legislative histories of §§ 853 and 1963 show that the purpose of the relation-back doctrine is to "close a potential loophole in current law whereby the criminal forfeiture statute would be avoided by transfers that were not 'arm's length' transactions." 645 F.Supp. at 456, *quoting*, S.Rep. No. 225, *supra*, at 3383–3384. Therefore, the court held that the purpose of the statute would not be undermined by exempting legitimate attorney's fees from forfeiture. 645 F.Supp. at 456. *See also*, *United States v. Reckmeyer*, 631 F.Supp. 1191 (E.D.Va.1986).

Based on these cases, the tort claimants could argue that no statutory purpose is served by denying them relief. While it is true that their claims were not created through "sham" transactions, it does not seem possible to stretch the definition of bona fide purchaser to include the tort claimants. This is especially true since Congress could have easily provided for judicial determination of tort claims but chose instead to protect only two classes of claimants. Moreover, at least one court has held that the relation-back doctrine applies to tort claims. *United States v. One 1957 Model Tudor Ford*, 167 F.Supp. 864 (E.D.S.C.1958). Therefore, their sole remedy is to petition the Attorney General.

■ For the reasons stated above, the Court concludes that the tort claimants have no cognizable interest in the assets of Ark under 18 U.S.C. § 1963(m)(6)(A) and (B). The extent of this Court's authority is limited to adjudicating interests under those sections. Therefore, where the movants have no statutory interest in the assets, this Court has no authority to order that the assets of Ark be held intact or that the execution of the proposed settlements be stayed.

IT IS, THEREFORE, HEREBY ORDERED that the motion for an order requiring that the assets of Ark be held intact pending the determination of the rights of lawful claimants and staying the execution of the proposed settlements by the United States is DENIED.

## MINUTE ORDER IN CHAMBERS

### October 9, 1986

IT IS HEREBY ORDERED THAT a hearing will be held on Monday, October 20, 1986, at 9:30 o'clock A.M., to adjudicate the validity of the claims of Imco Realty Services, Inc., Dorothy Graham, Carol and Lawrence Holst, John Zyla, Elizabeth Zyla, and John Nemec, Friedman, Sloan & Ross, P.C., Sandoz Chemicals, VWR Scientific, Butler Paper Co., Thomas Printing Inks, Inc., and Brenton Safety, Inc. Each side shall be limited to one hour.

At said hearing pursuant to 18 U.S.C. § 1963(m)(6)(A) and (B) the Court will determine whether the petitioners have a legal right, title or interest in the forfeited property of Ark Distributing Company, Inc. ("ARK"), which renders the order of forfeiture invalid in whole or in part, or whether the petitioners are bona fide purchasers for value of the right, title, or interest in the forfeited property of ARK.

The Court will also determine the nature and extent of such interests, including whether the various unsecured trade creditors are entitled to have the forfeiture order amended. *See United States v. Figueroa*, 645 F.Supp. 453 (W.D.Pa.1986); *United States v. Reckmeyer*, 631 F.Supp. 1191 (E.D.Va.1986).

Upon adjudication of these claims, the Court will amend the order of forfeiture, if appropriate, and will determine that the United States shall have clear title to the forfeited property of ARK and may warrant good title to any subsequent purchaser or transferee.

With regard to the government's motion for Court approval of its proposed settlements, the Court finds that 18 U.S.C. § 1963(g) and (h)(4), give the Attorney General, rather than the Court, the authority to dispose of the forfeited property and 18 U.S.C. § 1963(g) gives him the authority to

settle and compromise claims in the forfeited property once their validity has been adjudicated by the Court under 18 U.S.C. § 1963(m)(6).

The Court's authority in this context is limited by 18 U.S.C. § 1963(m) to the determination of whether petitioners for adjudication of claims in forfeited property have an interest in or are bona fide purchasers of that property. The statute does not grant the Court the authority to approve settlements or compromises with respect to the forfeited property or to approve the disposition of the same or division of proceeds from such sales. The proposed actions of the Attorney General with respect to the forfeited property may be subject to judicial review, but prior court approval is not authorized. Therefore, the Court will deny the government's motions to approve the settlements.

IT IS FURTHER ORDERED that the United States' motions for an order approving the settlement of the petitions of Imco Realty Services, Inc., Dorothy Graham, Carol and Lawrence Holst, John Zyla, Elizabeth Zyla and John Nemec and Friedman, Sloan & Ross, P.C., are DENIED.

### SUPPLEMENTAL ORDER

Following the criminal conviction of James Vernon Mageean, the Court, on March 13, 1986, ordered forfeiture of 100% of the shares of Ark Distributing Company, Inc. ("Ark") pursuant to 18 U.S.C. § 1963 (1986). Pursuant to 18 U.S.C. § 1963(m), the United States gave notice of the forfeiture by publication and by direct notice to known interested third parties.

On December 23, 1985, an airplane in which Ark owned an interest crashed into the Sun Valley Shopping Center in Concord, California. The crash caused seven deaths and several injuries. Suits have been filed on behalf of many of those injured in California state court against Ark and other defendants.

Several of these tort claimants have also filed petitions to adjudicate their claims in the forfeited property of Ark pursuant to 18 U.S.C. § 1963(m). The issue presently before the Court is whether the tort claimants have any cognizable interest in the forfeited assets of Ark which would entitle them to a hearing under 18 U.S.C. § 1963(m). The legislative history of section 1963(m) clearly indicates that this Court has the authority to deny a hearing to any petitioner who fails to state any basis for relief described in that section. S.Rep. No. 225, 98th Cong., 2d Sess., *reprinted in* 1984 U.S.Code Cong. & Ad. News 3374, 3391.

The tort claimant's contend that the due process clause mandates a hearing of their claims. They assert that if they presently held enforceable judgments against Ark, they would have a right, title or interest in the forfeited property. This, however, is simply not the case. The Court in its Order of October 9, 1986, extensively addressed the issue of whether the tort claimants have a statutory interest in the forfeited assets. In that Order, the Court found that it was without authority to grant the tort claimants' motion for an order that the assets of Ark be held intact because the tort claimants have no cognizable interest in Ark's assets under 18 U.S.C. § 1963(m)(6)(A) and (B). The Court adheres to this view and is not persuaded by the tort claimants argument.

The tort claimants are innocent parties who have suffered a tragic loss. Therefore, they have a strong argument that recognizing their claims would be consistent with the purposes of the forfeiture statute. In fact, in a contemporaneous order, the Court concluded that unsecured trade creditors who had provided goods and services to Ark had cognizable interests in the property under § 1963(m)(6)(B).

Unfortunately, however, the same conclusion cannot be made with respect to the tort claimants. At the core of the Court's decision regarding the trade creditors was the fact that they paid value to Ark in Exchange for their claims against Ark's assets. Therefore, the Court held that the trade creditors were bona fide purchasers of their claims to the same extent as a third

party who purchased tangible property of Ark. Although the trade creditor's losses may be insignificant in comparison to the tort claimants' injuries, the tort claimants were not involved in an arm's length transaction with Ark and did not pay value for their claims. Therefore, their claims do not fit within any realistic definition of "bona fide purchaser."

Although section 1963(m)(6)(A) and (B) should be read in view of the forfeiture statute's purposes, *United States v. Reckmeyer*, 628 F.Supp. 616, 620 (E.D.Va.1986), the Court cannot ignore the language of the statute. While it may be true that the relation-back doctrine is designed to void sham transactions and not to affect innocent parties, the United States had an interest in the defendant's property as of the date of the relevant criminal acts that defeats all subsequent transfers unless the transferee is a "bona fide purchaser for value." 18 U.S.C. § 1963(c). Since Congress could have easily provided an exception for tort creditors and other innocent parties but chose instead to protect only certain categories of claimants, this Court will not create another exception.

Thus, this case is distinguishable from *Reckmeyer* and, even if they had an enforceable judgment against Ark, the tort claimants would not have a statutory interest in the property. Moreover, they have failed to show any "property" right under the Constitution. The only case other than *Reckmeyer* cited by the tort claimants in support of their right to a hearing is *United States v. One Piece of Real Estate*, 571 F.Supp. 723, 725 (W.D.Tex.1983). This case does more harm than good to the tort claimants argument, however, because it recognizes that under *United States v. Stowell*, 133 U.S. 1, 17–18, 10 S.Ct. 244, 247–48, 33 L.Ed. 555 (1890), the government's interest in property is fixed as of the date of the relevant criminal acts and that no third party can acquire a legally recognized interest in the forfeited property after that date. *Id.* Moreover, any modification of the relation-back doctrine made by this case is not based on constitutional grounds. Therefore, the tort claimants have not

shown that section 1963(c) is unconstitutional. In fact, the weight of authority legitimates the relation-back component of the the the statute. *See e.g., Stowell, supra; Simons v. United States*, 541 F.2d 1351, 1352 (9th Cir.1976). The Court also notes that prior to the 1984 amendments, there was no judicial remedy for *any* third party claiming an interest in forfeited property. Since Congress could choose to provide no judicial remedy, it is not unconstitutional for Congress to provide a remedy only for certain claimants even though this choice leads to disparate treatment of different classes of claimants asserting an interest in forfeited property. *See United States v. One 1971 Mercedes Benz*, 542 F.2d 912, 914 (4th Cir.1976).

The Court concludes that the tort claimants' petitions are facially invalid and, therefore, the tort claimants are not entitled to a hearing under 18 U.S.C. § 1963(m)(6)(A) and (B). The tort claimants' sole remedy is to petition the Attorney General for remission and mitigation of forfeiture pursuant to 18 U.S.C. § 1963(h)(1) and (i)(2) and 28 C.F.R. Part 9.

The petitioners also assert that some of the tort claimants have not been given direct notice of the forfeiture and, therefore, notice to the class as a whole is inadequate. This claim is not well taken. Since the Court has determined that these claimants have no interest in the assets of Ark, notice may be unnecessary. Moreover, the tort claimants before the Court do not cite any authority to show that they have standing to raise this claim on behalf of those not receiving notice. And finally, the notice provision of 18 U.S.C. § 1963(m)(1) provides that "the United States shall publish notice . . ." of the forfeiture and "may also, to the extent practicable, provide direct written notice to any person known to have an alleged interest in the property . . ." It is well established that direct notice to all interested parties is not constitutionally mandated and that notice by publication is permissible if the identity of interested parties is unknown and not easily ascertainable. *Mullane v. Central Hanover Bank*

*& Trust Co.,* 339 U.S. 306, 317–19, 70 S.Ct. 652, 658–60, 94 L.Ed. 865 (1950). In this case, the creditors who did not receive notice were unknown to the government. Therefore, this claim must also fail.

IT IS, THEREFORE, HEREBY ORDERED that the petition for adjudication of claims in the forfeited property of Ark Distributing Company, Inc., made by the Evangelista family, the Molina family, Harold Carlson, Kenith Roberson, the Camcam family, Robert Widick, the Lodge family, the Oliver family, the Lewis family, the Trice family, the Larson family, and Jonathan Crouch are DISMISSED.

### On Petitions to Adjudicate Claims

■ Following the conviction of James Vernon Mageean under 18 U.S.C. § 1962(c) and (d) (1984), this Court ordered that 100% of the shares of Ark Distributing Co., Inc. (Ark) be forfeited to the United States. The acts giving rise to forfeiture occurred between April of 1978 and May of 1984. In its order of October 9, 1986, the Court determined that the forfeiture order also extended to the assets of Ark. The United States gave notice of the forfeiture by publication and by direct notice to interested third parties as required by 18 U.S.C. § 1963(m) (1986).

Pursuant to 18 U.S.C. § 1963(m), several parties have filed petitions to adjudicate their claims in the forfeited property of Ark. The petitions at issue here were filed by Sandoz Chemicals, the San Francisco branch of VWR Scientific, Butler Paper Co., Brenton Safety, Inc., and Thomas Printing Inks, Inc. These parties provided goods and services to Ark and are unsecured trade creditors. A hearing to adjudicate these petitions was held before the Court on November 10, 1986. The only claimant represented at said hearing was Sandoz Chemicals.

These trade creditors claim that under 18 U.S.C. § 1963(m)(6) they have a legal interest in the forfeited property of Ark and, therefore, they are entitled to have the order of forfeiture amended. The United States argues, however, that general unsecured creditors have no claim to the forfeited assets under § 1963(m)(6).

To decide this issue, the Court must carefully examine the relevant statutes. Under the Comprehensive Crime Control Act of 1984, which included the Comprehensive Forfeiture Act of 1984, the provisions of § 1963 were amended substantially. These amendments were intended to make forfeiture a more powerful weapon in the fight against drug trafficking and racketeering. Congress emphasized that under the prior law defendants could defeat forfeiture by removing, transferring or concealing their assets prior to conviction. S.Rep. No. 225, 98th Cong., 2d Sess., *reprinted in* 1984 U.S.Code Cong. & Ad.News 3374, 3378 (hereinafter cited as S.Rep.).

To strengthen the hand of law enforcement officials, Congress enacted 18 U.S.C. § 1963(c) (1986).[1] Under this provision, forfeiture relates back to the date of the commission of the acts giving rise to the forfeiture. Although the "relation back doctrine" does not affect a third party's interest in the forfeited property if his interest arose before that date, *see* 18 U.S.C. § 1963(m)(6)(A), the government's interest does defeat subsequent transfers of the defendant's property. The one exception to § 1963(c) is for a third party who shows that under § 1963(m)(6)(B) he is a bona fide purchaser for value of the defendant's property reasonably without cause to believe that the property was subject to forfeiture. Therefore, for the trade creditors

1. 18 U.S.C. § 1963(c) reads:
   (c) All right, title, and interest in property described in subsection (a) vests in the United States upon the commission of the act giving rise to forfeiture under this section. Any such property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (m) that he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section.

to prevail they must show that their claims are cognizable under § 1963(m)(6)(A) and (B).

Under 18 U.S.C. § 1963(m)(6)(A) and (B), the order of forfeiture will be amended if the trade creditors fit within one of two statutory classes. The two classes are:

(A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section . . .

18 U.S.C. § 1963(m)(6). Since the trade creditors claims arose after Mageean's criminal acts began, and, therefore, they did not have an interest superior to the defendant's interest at the time of the commission of the criminal acts, only subsection (B) potentially applies to their claims. Moreover, if their claims do not fit within this class, the trade claimants sole remedy is to petition the Attorney General for remission and mitigation of forfeiture pursuant to 28 C.F.R. Part 9. S.Rep. at 3391–92. *See also* 18 U.S.C. § 1963(j) (1986).

According to the government, only legal interests are recognized by § 1963(m)(6), and, therefore, unsecured trade creditors have no cognizable interest under that section. It cites the following legislative history to support this argument:

Paragraph (6) provides that a third party will prevail if his claim falls into one of two categories: first, where the petitioner had a legal interest in the property that, at the time of the commission of the acts giving rise to the forfeiture, was vested in him rather than the defendant or was superior to the interest of the defendant; or second, where the petitioner acquired his legal interest after the acts giving rise to the forfeiture but did so in the context of a *bona fide* purchase for value and had no reason to believe that the property was subject to forfeiture.

S.Rep. at 3392 (footnote omitted).

The Court agrees that only legal interests are recognized and concedes the trade creditors do not, in a technical sense, have legal interests in the forfeited property. In determining the scope of § 1963(m)(6) and that section's definition of the term "legal interest," however, its language must be interpreted to effectuate the overall intent of the statute. *United States v. Reckmeyer*, 628 F.Supp. 616, 620 (E.D.Va.1986) ("*Reckmeyer I*"). And, as the Supreme Court stated, "[f]orfeitures are not favored; they should be enforced only when within both the letter and spirit of the law." *United States v. One Ford Coach*, 307 U.S. 219, 226, 59 S.Ct. 861, 865, 83 L.Ed. 1249 (1939) (citation omitted). Moreover, the intent of the statute is far from clear because the amendments were very hastily passed. In fact, not all of the Act's pages were included in the copy signed by the President. *United States v. Rogers*, 602 F.Supp. 1332, 1336 (D.Col.1985). Therefore, this piece of legislative history alone is not convincing. Upon closer examination of the statute and its legislative history, the Court concludes that recognizing the trade creditors' claims as legal interests in the forfeited property is consistent with the Congressional intent.

Congress stated that the purpose of subsection (c) of 18 U.S.C. § 1963:

[I]s to permit the voiding of certain preconviction transfers and so close a potential loophole in current law whereby the criminal forfeiture sanction could be avoided by transfers that were not "arms' length" transactions. On the other hand, this provision should not operate to the detriment of innocent *bona fide* purchasers of the defendant's property.

S.Rep. at 3383–84. Perhaps an even more persuasive statement of legislative intent is contained in a footnote to the passage cited by the government. It states that § 1963(m)(6)(A) and (B) "should be construed to deny relief to third parties acting as nominees of the defendant or who have knowingly engaged in a sham or fraudulent transactions." S.Rep. at 3392 n. 47. Other portions of the legislative history also confirm this view of the statute. *See* Sen.R. at 3377, 3378–79. *See also United States v. Figueroa,* 645 F.Supp. 453, 455 (W.D.Pa.1986); *United States v. Basset,* 632 F.Supp. 1308, 1317 (D.Md.1986); *United States v. Reckmeyer,* 631 F.Supp. 1191, 1196 (E.D.Va.1986) (a case connected to *Reckmeyer I* and hereinafter cited as *Reckmeyer II*); *United States v. Rogers,* 602 F.Supp. 1332, 1342 (D.Col.1985).

Based on this legislative history, it appears that Congress did not intend to exclude the interests of unsecured trade creditors from its definitions of "legal interest" and "bona fide purchaser for value." Although a bona fide purchaser is traditionally thought of as a buyer of tangible property, given the purposes of the statute, there is no reason that a good faith provider of goods and services cannot be a bona fide purchaser under the statute. The trade creditors before the Court are innocent parties and their transactions with Ark were made at arm's length. If a bona fide obligation arose between Ark and the trade creditors as a result of these transactions, then the trade creditors have purchased "property" i.e., their claims against Ark. As long as these were not fraudulent transactions, the Court will not distinguish between trade creditors who paid value for their claims against Ark with the goods and services they provided, and a third party who buys a defendant's property with other forms of consideration.

---

**2.** Section 853 is the forfeiture provision of the Comprehensive Drug Abuse and Control Act of 1970. Like § 1963, § 853 was amended by the Crime Control Act of 1984. As amended, the two statutes are, in nearly all respects, identical. S.Rep. at 3392.

The relevant case law supports this view of the statute. *Reckmeyer I* is the only case discussing the status of unsecured creditors under the amended forfeiture statutes. In *Reckmeyer I,* the government argued that an unsecured lender had no standing under 21 U.S.C. § 853(n)(6) (1986) to contest a forfeiture.[2] The court disagreed, however, and held that general creditors have standing to assert their claims. *Id.* at 621–22. It set forth two rationales for its decision. First, the Court found that Congress enacted § 853(n) to provide for a hearing of third-party claims because it recognized that the harsh impact of *in personam* forfeiture should not be imposed on innocent parties. *Id.* at 620. Therefore, the court stated:

> The court does believe Congressional intent that "Third parties who assert claims to criminally forfeited property, which in essence are challenges to the validity of the order of forfeiture, are entitled to a judicial determination of their claim," [Sen.R. at 3391] ... mandates that it construe § 853(n)(6)(A) to provide standing for all general creditors to make claims which may rebut the government's presumption of forfeitability under § 853(d).

*Id.* at 621.

The second rationale is based on the Fifth Amendment's guarantee of due process of law. Since this Court finds that § 1963(m)(6) provides a remedy for unsecured creditors, it is unnecessary to address the Fifth Amendment issue. The Court agrees with *Reckmeyer I* that a general creditor has a "legal interest" in the forfeited property if it shows, by a preponderance of the evidence, that a bona fide obligation exists between the creditor and the defendant which would overcome the government's interest. *Id.* at 621–22. *See*

---

More importantly, §§ 853(n)(6) and 1963(m)(6) establish identical procedures for the hearing of third party claims. S.Rep. at 3397. Since these sections are given the same interpretations, *Basset,* 632 F.Supp. at 1309; *Reckmeyer II,* 631 F.Supp. at 1195 n. 2, the cases dealing with § 853(n)(6) are directly on point.

*also Reckmeyer II,* 631 F.Supp. at 1194 and n. 1.

Further guidance is provided by several cases which hold that legitimate attorney's fees are exempt from forfeiture. In *Reckmeyer II,* the district court held that an attorney who represented the defendant in his criminal trial but had not been paid for his services, had standing under § 853(n)(6). Although the attorney could not make a specific claim for relief under § 853(n)(6), the court's analysis of the legislative history showed that he had a legal interest in the forfeited property and that he was entitled to a judicial determination of his claim. *Id.* at 1194, *citing* S.Rep. at 3391. Although the court stated that a contrary reading of the statute would violate the Sixth Amendment, it also emphasized that the statute's purpose was not served by applying forfeiture to bona fide legal fees. *Id.* at 1196.

Similarly, in *Rogers,* the Colorado District Court found that attorneys who provided legitimate services and were reasonably without cause to know that assets were subject to forfeiture were bona fide purchasers for value. *Rogers,* 602 F.Supp., at 1346. Citing Black's Law Dictionary's definition of bona fide purchaser,[3] the court stated that an "attorney who receives fees for services rendered pays value," and, therefore, his claim is within § 1963(m)(6)(A) and (B). *Id.* Moreover, the court said that exempting legitimate attorney's fees would not undermine the purpose of § 1963(c) because "[a]n attorney who receives funds in return for services legitimately rendered operates at arm's length and not as part of an artifice or sham." *Id.* at 1348. *See also Basset,* 632 F.Supp. at 1315–16; *United States v. Badalamenti,* 614 F.Supp. 194, 198 (S.D.N.Y. 1985). *But cf., Payden v. United States,* 605 F.Supp. 839, 849–50 n. 14 (S.D.N.Y.

1985), *rev'd on other grounds,* 767 F.2d 26 (2nd Cir.1985) (stating, in dicta, that attorneys cannot be bona fide purchasers because they have actual notice of the defendant's indictment, and, therefore, cause to believe that the defendant's property is subject to forfeiture).

The *Figueroa* case is even broader since it involved a court-appointed attorney's claim, and, therefore, the Sixth Amendment was not implicated. The court held in *Figueroa* that a good faith provider of legal services is entitled to a judicial determination of his claims. *Id.* 645 F.Supp. at 453. Although a literal reading of § 853(c) might cut off the attorney's claim, the court stated that the purpose of that subsection to defeat illusory transfers does not apply to an attorney who renders services at arm's length. Thus, *Figueroa* seems to imply that any party who transacts at arm's length with a defendant and has no knowledge of his criminal activities, has an interest in forfeited property.

*Reckmeyer I* and the attorneys' fees cases stand for the proposition that a good faith provider of goods and services has a right to be paid for those goods and services under § 1963(m)(6). It is important to note that, like the trade creditors, the petitioners in these cases were not bona fide purchasers of property in the traditional sense. Instead, the attorneys had provided legal services to the defendants and, in *Reckmeyer I,* the petitioner loaned money to the defendant. In each of these cases, although the court recognized that the petitioners' claims might not be recognized by a literal interpretation of the forfeiture statutes, they held that the petitioners paid value and therefore their claims should be allowed.

The trade creditors also are bona fide purchasers in the sense that they paid value for their claims against Ark.[4] Even the

---

**3.** Black's Law Dictionary defines *bona fide* purchaser as:

> One who has purchased property for value without any notice of any defects in the title of the seller [citation omitted]. One who pays valuable consideration, has no notice or out-

standing rights of others, and acts in good faith [citation omitted].

**4.** This factor distinguishes the claims of the trade creditors from those made by the tort creditors of Ark. As the Court held in its contemporaneous order, tort creditors cannot be

court in *Payden* apparently recognized that forfeiture does not extend to one who receives funds from the defendant in exchange for goods and services rendered at arm's length and without knowledge that the funds are subject to forfeiture. *Payden*, 605 F.Supp. at 849 n. 14. *See also, Rogers*, 602 F.Supp. at 1348. The Court does not see any distinction between a trade creditor who has been paid in full and one who has not since under the statute both would have to establish that they are bona fide purchasers. The Court also notes that the petitioners in *Reckmeyer I, Reckmeyer II* and *Figueroa* had not been paid and merely held unsecured claims. These cases persuade the Court that the trade creditors are entitled to relief under § 1963(m)(6)(B).

The government has not cited any authority which refutes this line of cases. It has cited several cases which predate the 1984 amendments and which state that an innocent owner of forfeited property has no right to a judicial remedy unless Congress provides for it. *See, e.g., United States v. Andrade*, 181 F.2d 42, 46 (9th Cir.1950). While this may be true, Congress did create a judicial remedy when it enacted § 1963(m)(6) and the Court reads this section to include unsecured creditors. Therefore, the government's cases are not persuasive.

In conclusion, the trade creditors have shown, by a preponderance of the evidence, that they are bona fide purchasers and that at the time they transacted business with Ark, they were reasonably without cause to believe that Ark's assets were subject to forfeiture. Therefore, the order of forfeiture must be amended.

As noted above, only counsel for Sandoz Chemicals was present at the hearing of this matter. The government and Sandoz stipulated that the amount owed Sandoz by Ark was $4,627.00. With regard to the other claims, the government made an offer of proof that VWR Scientific was owed $3,921.90 and that Butler Paper Co. was owed $854.15. The government explained that the difference between these amounts and the amounts claimed in the petitions is due to materials shipped to Ark after the date of forfeiture which were returned by the government and discrepancies in the billing rates, respectively. The government did not dispute the amounts claimed to be owed to the other claimants.

IT IS, THEREFORE, HEREBY ORDERED that petitioner, Sandoz Chemicals, as an unsecured creditor, is possessed of a legal right, title or interest pursuant to Title 18, United States Code, Section 1963(m)(6)(A) and (B) in the amount of $4,627.00.

IT IS FURTHER ORDERED that petitioner VWR Scientific, San Francisco branch, as an unsecured creditor, is possessed of a legal right, title or interest pursuant to Title 18, United States Code, Section 1963(m)(6)(A) and (B) in the amount of $3,921.90.

IT IS FURTHER ORDERED that petitioner Butler Paper Co., as an unsecured creditor, is possessed of a legal right, title or interest pursuant to Title 18, United States Code, Section 1963(m)(6)(A) and (B) in the amount of $854.15.

IT IS FURTHER ORDERED that petitioner Thomas Printing Inks, Inc., as an unsecured creditor, is possessed of a legal right, title or interest pursuant to Title 18, United States Code, Section 1963(m)(6)(A) and (B) in the amount of $260.32.

IT IS FURTHER ORDERED that petitioner Brenton Safety, Inc., as an unsecured creditor, is possessed of a legal right, title or interest pursuant to Title 18, United States Code, Section 1963(m)(6)(A) and (B) in the amount of $487.97.

IT IS FURTHER ORDERED that the order of forfeiture dated March 13, 1986, shall be AMENDED in accordance with the foregoing Orders of this Court.

bona fide purchasers since they have not paid value or rendered goods and services to Ark. Therefore, although they have suffered a great injury, the tort creditors are not bona fide purchasers.