**UNITED STATES of America**

**v.**

**BCCI HOLDINGS (LUXEMBOURG), S.A., Bank of Credit and Commerce International, S.A., Bank of Credit and Commerce International (Overseas) Limited, International Credit and Investment Company (Overseas) Limited, Defendants.**

**Crim. No. 91–0655 (JHG).**

United States District Court,
D. Columbia.

Feb. 22, 1993.

See also 814 F.Supp. 106.

---

**112**

Stefan D. Cassella, Daniel Stark, Latrena Carrington, Trial Attys., Asset Forfeiture Office, U.S. Dept. of Justice, Washington, DC, for U.S.

Michael Nussbaum, Eric L. Lewis, Nussbaum & Wald, Washington, DC, for Court appointed fiduciaries for the four corporate defendants.

Richard L. Cys, Davis Wright Tremaine, Washington, DC, for petitioner.

## ORDER DISMISSING THE APRIL 24, 1992 AND SEPTEMBER 2, 1992 PETITIONS OF BANCO CENTRAL DE RESERVA DEL PERU

JOYCE HENS GREEN, District Judge.

Presently pending are the Petitions for Relief Pursuant to 18 U.S.C. § 1963(*l*) filed by Banco Central de Reserva del Peru ("Peru") on April 24, 1992 and September 2, 1992. Upon consideration of all filings relating thereto, including the government's motions to dismiss, and having considered arguments made at the hearing held February 11, 1993, Peru's petitions are dismissed.

## BACKGROUND

On January 24, 1992, this Court, following findings of fact and conclusions of law with supporting reasons made in open court, accepted the pleas of guilty of the four corporate defendants (collectively "BCCI") and the plea agreement between them and the United States of America. Thereupon, and in accordance with 18 U.S.C. § 1963, an Order of Forfeiture was entered. Paragraph 1(e) of that Order provides that the four corporate defendants named in this action shall forfeit to the United States ownership interests in all property located in the United States, including, without limitation, real property and all tangible and intangible personal property, however held, whether subsequently identified, determined or discovered in the course of the ongoing liquidation proceedings described therein or otherwise identified, determined, or discovered in any manner at any time, but not property that may be brought into the United States by or on behalf of court-appointed fiduciaries of BCCI in the course of the management or disbursement of the liquidation estates as described in the plea agreement. Attached to the January 24, 1992 Order as Exhibit A was a list of specific BCCI accounts, with corresponding numbers, names, and approximate balances, which the United States Marshals Service was directed to seize forthwith. Because the government was unable to verify certain information concerning additional forfeitable accounts at the time the Order of Forfeiture was entered, the Court issued a supplemental Order on January 31, 1992 which directed immediate seizure of the specific assets listed therein.

In satisfaction of 18 U.S.C. § 1963(*l*)(1), and to inform third parties of potential rights to seek recovery of assets declared forfeited, the United States published notice of the Order of Forfeiture, as amended, during the period between February 13, 1992 and March 27, 1992 in eleven major United States newspapers including the *Wall Street Journal*, the *New York Times*, the *Chicago Tribune*, and the *Los Angeles Daily Journal*. *See* Government's Compliance with Order of May 8, 1992, filed May 12, 1992. In addition, personal notice was sent to over 340 persons and entities as late as April 3, 1992. *Id.*

On April 24, 1992, Peru filed a petition to amend the January 24, 1992 Order of Forfeiture. The petition alleges that BCCI and agents thereof authorized or caused to be authorized the payment of $3 million in

bribes to Peru's principal officers in a successful effort to influence the officers to deposit $300 million of the petitioner's funds with BCCI. The legal interests which Peru seeks to recover are:

(i) $3,000,000 plus interest from the date of each bribe or kickback and in addition, or in the alternative, such actual damages (including injury to reputation and the difference between the amount of interest paid on Petitioner's deposits with [BCCI] and the amount of interest that should have been paid under normal banking relationship) attributable to [BCCI's] unlawful actions; (ii) damages for very serious injury to Petitioner's reputation; and (iii) such other damages recoverable pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq.

April 24, 1992 Petition at 4. Peru claims that because BCCI was willing to expend at least $3 million in bribes and kickbacks to obtain a loan agreement with Peru, BCCI must have obtained some economic gain from Peru beyond the benefits which would normally arise from a regular commercial transaction. Although Peru alleges that the "extra economic benefit" accruing to BCCI for which Peru was never compensated "appears to be part of the assets forfeited to the United States Government in these proceedings," Memorandum of Law in Opposition to the United States' Motion to Dismiss the Petition of Banco Central de Reserva Del Peru ("Opposition") at 2, Peru fails to name any specific account listed in the Order of Forfeiture which contains the funds to which it lays claim. Peru concedes that it fully recovered the $300 million which it deposited with BCCI and, consequently, its petition does not seek the return of those funds. Opposition at 2, 14.

In accordance with a briefing schedule issued by the Court, the government filed a Motion to Dismiss Petitions of BCCI Tort Petitioners, which addresses Peru's petition as well as petitions filed by Shrichand Chawla, Leo D. Curran, Willy Hermans and Red Circle Investment, Ltd., Jaleh Khorassanchy, Amit Pandya, Soha, Inc., Idriss Devco, Inc., and S & L Gentrade, Inc.; the Republic of Panama; and Lee Scarfone, Patricia Scarfone, ALSA International, Inc., and Banditball, Inc. The court-appointed fiduciaries for the four corporate defendants subsequently filed a memorandum of law addressing the same petitions. Peru filed an opposition to the government's motion, and the government filed a reply thereto.

On June 24, 1992, the government filed a Motion to Amend Order of Forfeiture to Include Additional Property, seeking forfeiture of assets in newly discovered bank accounts held in the names of the corporate defendants, proceeds from the sale of a condominium purchased with resources provided by a corporate defendant, money remaining in a "BCCI Legal Fund" established by one of the corporate defendants for the defense of its employees' legal interests, a bankruptcy distribution to one of the corporate defendants, and assets held at various New York financial institutions in the name of ICIC Investments Ltd., a sibling corporation of defendant ICIC (Overseas) Ltd. The Court granted the government's motion and issued an Order of Forfeiture on July 29, 1992. The United States subsequently provided notice of the Order to potential claimants.

Peru filed its second petition on September 4, 1992, and though the petition sought funds forfeited in the more recent Order, it merely incorporated by reference the earlier petition. On December 28, 1992, the government filed a Motion to Dismiss Round Two Petitions of BCCI Tort Petitioners, which addressed Peru's second petition as well as the second petitions filed by Shrichand Chawla, Leo D. Curran, Willy Hermans and Red Circle Investment, Ltd., Jaleh Khorassanchy, Amit Pandya, Soha, Inc., Idriss Devco, Inc., and S & L Gentrade, Inc. and Lee Scarfone, Patricia Scarfone, ALSA International, Inc., and Banditball, Inc. Because all of three of the second petitions were identical to the corresponding first petitions, the government's round two motion did not present any new arguments and incorporated by reference its earlier motion to dismiss. On December 31, 1992, Peru filed an opposition to the government's round two motion which reiterated the arguments made in its earlier opposition. The government subsequently filed a reply thereto.

## DISCUSSION

Following the entry of an order of forfeiture pursuant to 18 U.S.C. § 1963(a), a third party may petition the issuing court for a hearing to amend the order to exclude certain property in which the third party claims a legal right, title, or interest. *See* 18 U.S.C. § 1963(*l*)(2). Subsection 1963(*l*)(6) sets forth the elements which the petitioner must prove in order to recover assets previously declared forfeited and states in full:

> If, after [a] hearing, the court determines that the petitioner has established by a preponderance of the evidence that—
>
> > (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
> >
> > (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;
>
> the court shall amend the order of forfeiture in accordance with its determination.[1]

Accordingly, a petitioner may recover forfeited assets under subsection 1963(*l*) in two ways. First, the petitioner may succeed by establishing all of the following:

(a) a "legal right, title, or interest"

(b) in property ordered forfeited, and

(c) that such "legal right, title, or interest" was either

(1) vested in the petitioner rather than the defendant at the time of the commission of the acts which gave rise to the forfeiture, or

(2) superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture.

In the alternative, a petitioner may succeed by establishing all of the following:

(a) that it is a "bona fide purchaser for value" of

(b) a legal "right, title, or interest"

(c) in property ordered forfeited, and

(d) was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture.

■ Only by establishing all elements of one of the two avenues may a third party obtain court-ordered relief from an order of forfeiture. *See United States v. Lavin,* 942 F.2d 177, 187 (3d Cir.1991) ("Those third parties who fall outside of both [avenues], regardless of how sympathetic they are, must petition the Attorney General for relief.").[2] If a third party fails to allege in its petition all requisite elements, the court may dismiss the petition without providing a hearing. *See United States v. Campos,* 859 F.2d 1233, 1240 (6th Cir.1988); *United States v. Magee-an,* 649 F.Supp. 820, 825 (D.Nev.1986), *aff'd,* 822 F.2d 62 (9th Cir.1987); S.Rep. No. 225, 98th Cong., 2d Sess., *reprinted in* 1984 U.S.Code Cong. & Ad.News 3374, 3391.

■ Peru does not seek recovery of assets under § 1963(*l*)(6)(A); its oppositions to the government's motions to dismiss rely solely on a theory asserted under § 1963(*l*)(6)(B).[3] Because the interests as-

---

1. Title 18 U.S.C. § 1963(*l*)(6) contains exactly the same language as 21 U.S.C. § 853(n)(6), the provision providing for forfeiture in criminal narcotics cases, and it appears that no court has interpreted those two provisions differently. Given the extreme similarity of the two statutes and the relative dearth of caselaw interpreting and applying § 1963(*l*), the Court's opinion relies on reasoning contained in § 853(n) cases as well as in § 1963(*l*) cases.

2. Although Peru could have submitted a petition for mitigation or remission of forfeiture to the United States Attorney General pursuant to 18 U.S.C. § 1963(g), it had not done so as of the date of the hearing on the government's motion to dismiss. *See* Transcript of Hearing on Motion to Dismiss, February 11, 1993, at 12.

3. Peru would not have been able to recover under § 1963(*l*)(6)(A) even had it attempted to do so. To succeed under subsection (*l*)(6)(A), a petitioner must establish that its asserted interest in forfeited property was either vested in the petitioner or superior to the defendant when the pattern of racketeering activities giving rise to

serted by Peru are alleged to have arisen from tortious conduct of the defendant, however, Peru cannot be considered a bona fide purchaser for value as required by subsection ($l$)(6)(B).

Although this Circuit has not yet addressed the meaning and scope of the term "bona fide purchaser for value" as the phrase is used in § 1963($l$)(6)(B) and similar forfeiture provisions, the Third Circuit and the District of Nevada have issued highly persuasive opinions holding that the term cannot be interpreted to include a petitioner who asserts a legal right, title, or interest arising from tortious conduct. *United States v. Lavin,* 942 F.2d 177 (3d Cir.1991); *United States v. Mageean,* 649 F.Supp. 820 (D.Nev. 1986), aff'd, 822 F.2d 62 (9th Cir.1987). In *Lavin,* a corporation from whom the defendant embezzled money filed a petition pursuant to 21 U.S.C. § 853(n)(6)(B) seeking to amend an order of forfeiture to exclude the embezzled funds. Conceding that it could not proceed under § 853(n)(6)(A), the petitioner proceeded on a theory that the embezzlement made the corporation a bona fide purchaser for value in an amount equivalent to the worth of the embezzled assets. The court rejected the corporation's attempt to characterize itself as a bona fide purchaser, expressing several reasons for its conclusion. The court stated that the word "purchaser" connotes a legislative intent to protect only legal interests which arise from volitional, rather than tortious, transactions. *Id.* 942 F.2d at 184. In addition, the court acknowledged that a petitioner asserting an interest as a bona fide purchaser must establish that it was unaware of the forfeitability of purchased assets when its interest arose. The court reasoned that if Congress intended to allow recovery by petitioners who conveyed value involuntarily as a result of tortious

conduct, it would be senseless to require that those petitioners were ignorant of the forfeitability of a defendant's assets at the time the interests were acquired. *Id.* Further, the court recognized that one of the legislative motivations for enacting the bona fide purchaser provision was to encourage business transactions by giving innocent buyers at least some level of assurance that their interests in purchased assets would be immune from government seizure. Obviously, the court concluded, sound commerce would not be promoted by facilitating tortious actions such as embezzlement. *Id.* at 187.

In *Mageean,* a case decided prior to *Lavin,* victims of an airplane crash filed a petition pursuant to what is now codified as § 1963($l$)[4] to recover forfeited funds seized from a corporation which owned an interest in the plane. The opinion in *Mageean* is not as detailed as the *Lavin* opinion, but it recognizes that § 1963($l$) protects only two classes of petitioners and concludes that "it does not seem possible to stretch the definition of bona fide purchaser to include the tort claimants. This is especially true since Congress could have easily provided for judicial determination of tort claims but chose instead to protect only two classes of claimants." *Mageean,* 649 F.Supp. at 824.

Peru does not deny, nor can it, that the legal interests it seeks to shield from forfeiture arose from alleged tortious activities of BCCI. In addition, Peru does not appear to challenge the holdings or underlying reasoning of *Lavin* and *Mageean.* Rather, Peru contends that its claims are distinguishable from those in *Lavin* and *Mageean* because Peru is a victim of the activities giving rise to the forfeiture and because "unlike the petitioners in *Lavin* and *Mageean,* [its] tort claim arose in the context of an advertent,

the forfeiture commenced. *See United States v. Lavin,* 942 F.2d 177, 185 (3d Cir.1991); *United States v. Delco Wire and Cable Co., Inc.,* 772 F.Supp. 1511, 1520 (E.D.Pa.1991); *United States v. Mageean,* 649 F.Supp. 820, 828 (D.Nev.1986), aff'd, 822 F.2d 62 (9th Cir.1987). Because the pattern of racketeering activity which formed the basis for the Court's Order of Forfeiture began in 1978, *see* Superseding Information, filed December 19, 1991, at 7; Transcript of Arraignment and Offer of Plea Before the Honorable Joyce Hens Green United States District Judge, Janu-

ary 9, 1992, at 55 *et seq.,* and because Peru's alleged interests in forfeited assets did not arise until 1986 at the earliest, *see* Peru's petition at 3; Exhibit A to Peru's petition at 6, the relation-back provision of § 1963($l$)(6)(A) prevents Peru from obtaining relief under that subsection.

4. At the time *Mageean* was decided, the language contained in § 1963($l$) was codified as § 1963(m).

contractual transaction with the BCC Group." Opposition at 14. Both of Peru's attempts to distinguish *Lavin* and *Mageean* are unavailing. Section 1963(*l*) does not distinguish tort claimants who were victims of activities giving rise to an order of forfeiture from tort claimants who suffered because of actions not related to the forfeiture. And regardless of the fact that voluntary transactions between BCCI and two of Peru's officers form the basis of Peru's petition, Peru claims to have been unaware of the alleged illegal transactions. Peru, therefore, must be considered to have obtained its asserted interests as involuntarily as the petitioners in *Lavin* and *Mageean* obtained theirs.

## CONCLUSION

Given that Peru's alleged interests arose from tortious activities, and for reasons substantially the same as those stated in *Lavin* and *Mageean*, Peru cannot be considered a bona fide purchaser for value as that term is used in § 1963(*l*). Peru, therefore, is unable to successfully establish all elements necessary for recovery under § 1963(*l*). Accordingly, it is hereby

ORDERED that the Petitions for Relief Pursuant to 18 U.S.C. § 1963(*l*) filed by Banco Central de Reserva del Peru on April 24, 1992 and September 2, 1992 are dismissed.

IT IS SO ORDERED.