**Marcus D. RICHARDSON, Appellant,**

v.

**UNITED STATES, Appellee.**

Nos. 94–CF–43, 94–CF–71, 96–CO–90.

District of Columbia Court of Appeals.

Argued June 2, 1997.
Decided July 31, 1997.

Kathleen Sutherland, appointed by the court, Washington, DC, for appellant.

James R. Costello, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney at the time the brief was filed, and John R. Fisher, Thomas C. Black and Margaret A. Flaherty, Assistant United States Attorneys, were on the brief, for appellee.

Before FERREN, STEADMAN and REID, Associate Judges.

STEADMAN, Associate Judge:

Pursuant to an eight-count indictment, appellant Marcus Richardson was tried for armed robbery, possession of a firearm during a crime of violence or dangerous offense, attempted kidnapping, unauthorized use of a vehicle, and four counts of malicious destruction of property. His attorney followed a strategy, characterized by the trial court as "brilliant," of admitting the acts of destruction of property in order to enhance his client's credibility in denying commission of the more serious offenses. The strategy was completely successful. Richardson was acquitted on all counts except those of malicious destruction of property.

Subsequently, Richardson filed a motion for a new trial under D.C.Code § 23–110 asserting in substance that his trial counsel had been constitutionally ineffective in pursuing that strategy. The principal issue before us is Richardson's challenge to the trial court's denial of this motion after a hearing.[1] We affirm.

## I.

The series of charges which included malicious destruction of property arose from Richardson's attempt to elude the police in an automobile chase in the early morning on April 12, 1992. Keith Meador testified that at approximately 12:30 am, Richardson and two other men ordered him out of his blue Honda Accord at gunpoint. Officer Brian Kasul spotted Richardson at approximately 12:45 am driving a blue Honda Accord with

---

1. Also before us in this consolidated appeal are appellant's meritless challenges to his completely unrelated conviction for possession of a controlled substance with intent to distribute. The trial court properly admitted evidence that the arresting officer smelled marijuana emanating from a group of men in the vicinity of appellant to explain the circumstances surrounding the officer's action and where no suggestion was made that Richardson himself was even a possible source of the scent. *See Toliver v. United States,* 468 A.2d 958, 960 (D.C.1983); *Perritt v. United States,* 640 A.2d 702, 705 (D.C.1994). Likewise, the trial court properly admitted evidence that Richardson had a pager and $76 in cash when arrested. *See Blakeney v. United States,* 653 A.2d 365, 368–69 (D.C.1995); *Johnson v. United States,* 683 A.2d 1087, 1099 (D.C. 1996) (en banc), *cert. denied,* —— U.S. ——, 117 S.Ct. 1323, 137 L.Ed.2d 484 (1997).

its headlights off.[2] Kasul turned on his flashing lights and, when Richardson didn't stop, followed Richardson in an extended chase until Richardson crashed into three parked cars, damaging them in addition to Meador's Honda. Richardson was charged with armed robbery, possession of a firearm during a crime of violence or dangerous offense, attempted kidnapping, unauthorized use of a vehicle, and four counts of malicious destruction of property.

At trial, Richardson's defense was that he had rented the car for $40 from Meador, who needed the money to buy crack, and that Meador had fabricated the carjacking story. Richardson testified as such at trial but admitted to striking the three parked cars in fleeing from the police.[3] He was acquitted of all but the destruction of property counts. He received a sentence under the Youth Act of five years on each count, to be served concurrently.

■■■ Richardson now contends that the trial court erred in denying his motion to vacate his conviction and sentence on the four destruction of property counts because his trial attorney, John Krollman, was constitutionally ineffective in conceding his guilt instead of arguing that Richardson lacked the requisite malice.[4] To succeed on appeal, Richardson must demonstrate that the performance of his attorney was not within the range of competence demanded of attorneys in criminal cases, and that but for counsel's deficiencies, a different outcome would have been reasonably probable. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■■■ During his summation, Krollman stated that "this case is about accepting responsibility for your actions where you're responsible for them and Marcus Richardson has done that and [the prosecution] is right, we are making the point. He didn't get up there and try to tell you a story about the destruction of property. It's clear that he committed those acts and it's clear that he's guilty of those acts."[5]

A hearing was conducted pursuant to D.C.Code § 23–110, at which Krollman explained that there was "ample evidence" upon which to convict his client of destruction of property. In light of that evidence, he felt it would have appeared "ludicrous" to seriously contest the issue. Mr. Krollman testified that his trial strategy in conceding the lesser charge was designed to make Richardson appear more credible with the jury when he proclaimed his innocence of the more serious offenses.[6] He observed that credibility was critically important given the theory of the defense, and speculated that a disingenuous argument with respect to destruction of property might have jeopardized that credibility. The trial court concluded that the defense strategy had not been constitutionally deficient.

The federal courts, presented with analogous factual situations, have found reasonable the type of defense tactics employed here. *See United States v. Wilks,* 46 F.3d 640, 644 (7th Cir.1995) (holding that trial counsel was not ineffective in conceding guilt

**2.** The car contained two passengers in addition to Richardson. Kasul did not learn that the car had been stolen until after Richardson had been apprehended. The car when first sighted by the officers was two blocks from where it had been taken from Meador.

**3.** In the words of the trial court, "[o]n the record and before the jury, the defendant admitted to the acts of driving the car without a license, failing to stop pursuant to police order, eluding the police and ultimately colliding into the parked cars." Richardson said he tried to avoid the police because he did not have a license and his brother was out in violation of a juvenile curfew.

**4.** Malice may be established, *inter alia,* by proving that the defendant acted "with a conscious disregard of known and substantial risks of harm that were likely to result to the property from his actions." *See* CRIMINAL JURY INSTRUCTIONS 4.35.

**5.** This statement was made in response to the prosecutor's comment during its summation that Richardson did not deny that he was responsible for the destruction of property, and that the issue had been conceded. We reject Richardson's contention that these comments amounted to prosecutorial misconduct, since they were a fair inference from Richardson's own testimony.

**6.** He also said that this approach would make it much easier for him to argue for a Youth Act sentence for Richardson or for probation.

with respect to lesser drug offense in order to lend credibility to argument against the greater charge); *United States v. Simone,* 931 F.2d 1186, 1196 (7th Cir.1991) (noting that "when the admissions concern only some of the charges to be proven, or when they do not actually concede guilt, counsel's concessions have been treated as tactical retreats and deemed to be effective assistance"); *United States v. Tabares,* 951 F.2d 405, 409 (1st Cir.1991) (finding that counsel's admission of defendant's guilt of less serious offense "was a tactical decision, designed to lead the jury towards leniency on the other charges and to provide a basis for a later argument (to the judge) for a lighter sentence"); *Underwood v. Clark,* 939 F.2d 473, 474 (7th Cir.1991) (finding reasonable attorney's tactic of "conceding client's guilt of offense of which the evidence was overwhelming, and to focus his efforts on the weakest link in the state's case"); *United States v. Leifried,* 732 F.2d 388, 390 (4th Cir.1984) (finding counsel's selective admission of guilt acceptable trial strategy).

Here, as in the cases cited above, the evidence supporting Richardson's conviction was strong, indeed well-nigh overwhelming. Richardson, an unlicensed driver, was driving at nighttime without his headlights. According to the arresting police officer, he pulled in behind Richardson and activated his rotating red and blue lights and high beams indicating that he wanted Richardson to stop. Richardson attempted to elude the patrol car, running through two stop signs before he lost control and jumped onto the sidewalk, colliding into three parked cars. Richardson's own testimony did not contradict this account in any material respects, even in cross-examination. There is little doubt from this evidence that Richardson acted "with a conscious disregard of a known and substantial risk of harm likely to result from his action." More importantly, the risk of losing credibility with the jury by vigorously contesting this lesser offense could have been potentially devastating given Richardson's defense to the more serious charges. Under these circumstances, we cannot conclude that Krollman's tactical decision was an unreasonable one.

█ We are not persuaded by Richardson's contention, raised in this form for the first time on appeal, that Krollman's remark amounted to an outright guilty plea. While counsel clearly conceded the *actus reus* elements of the offense ("he committed those *acts*"—referring to the uncontested fact that Richardson crashed into the parked cars), it appears that he never explicitly conceded the element of Richardson's *mens rea.* Indeed, counsel was silent with respect to his client's mental state at the time. The jury was instructed that they could convict Richardson of the offense only if the government had proven the requisite mental state beyond a reasonable doubt. *See* note 4 *supra.*[7]

Furthermore, it is reasonably apparent that Richardson acquiesced in counsel's general approach.[8] At the § 23–110 hearing, Krollman indicated that he informed Richardson of their trial strategy.[9] Although Richardson claimed that he told counsel prior to taking the stand that the collision had been an accident, he acknowledged that he had refrained from so testifying because he "didn't want to mess with what [Krollman]

---

7. In *Francis v. Spraggins,* 720 F.2d 1190, 1194 (11th Cir.1983), a capital case, defense counsel ignored his client's testimony to the contrary and made a "complete concession of the defendant's guilt." Even if Krollman's acknowledgment of Richardson's guilt were read as unequivocal, *Francis* was explicitly distinguished in *Simone, supra,* where the admission concerned only some of the charges and was hence a permissible tactical decision. 931 F.2d at 1196. Moreover, unlike the case at bar, there was no indication in *Francis* that the defendant had acquiesced in his counsel's approach.

8. In *Underwood v. Clark, supra,* 939 F.2d at 474, the court held that an attorney adopting such a course of action is making a tactical move and thus the consent of the client is not necessary. We do not reach that issue.

9. Krollman did not remember "precisely" having done so, but stated that he probably would have told him what they were going to do and cleared it with him, and that he did not spring those kinds of things on his clients. They had, he said, a good relationship and were open and honest with each other. Richardson acknowledged that Krollman had discussed the course of questioning but said that Krollman did not inform him that he intended to state to the jury that Richardson was guilty.

was doing," and that he was answering the questions that "we" went over. Richardson does not contend that he ever voiced a specific objection to the approach taken.

 Richardson alleges that apart from the summation remarks, Krollman provided ineffective assistance in failing to bring out in direct examination evidence that Richardson acted without the requisite malice. Richardson asserts that he would have testified that the accident was due to the fact that he was an inexperienced driver in an unfamiliar car, and that he did not believe that he was driving in a manner that would put property in risk of harm.[10] As the trial court concluded, it is doubtful that this additional testimony would have swayed the jury, given the strong circumstantial evidence of recklessness. *See* note 3 *supra.* Thus, Richardson's argument fails on the second prong of *Strickland* alone. Furthermore, it would have been in tension with the defense contention that Richardson had "accepted responsibility" for his actions, and again might have eroded his credibility with respect to the other charges.

 In sum, we agree with the trial court that defense counsel's strategy, under the circumstances of this case, was not unreasonable, and that his actions did not fall outside the range of competence demanded of attorneys in criminal cases or otherwise constitute constitutionally ineffective assistance of counsel.[11]

*Affirmed.*

---

10. Richardson did testify at his trial that he was unaware that his headlights were off.

11. Nor has Richardson established ineffective assistance of counsel on his alternate ground of Krollman's failure to file a motion to sever the destruction of property charges from the armed robbery and related charges. "[A]n attorney's failure to file a particular motion will not be regarded as ineffective assistance of counsel unless such a motion, if filed, would in all likelihood have been granted." *Taylor v. United States,* 603 A.2d 451, 459 (D.C.1992). Richardson presents no basis upon which such a motion would likely have been granted.